UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| IN RE APPLICATION OF YS GOLD REAL ESTATE LTD. AND YS GOLD INVESTMENTS LTD. FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782 | Case No. _____ |

## DECLARATION OF YITZHAK YAARI

I, Yitzhak Yaari, under penalties of perjury pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am over the age of 18 and make this declaration as to the underlying facts and events set forth herein upon information supplied by the Applicants YS Gold Real Estate Limited ("YSRE") and YS Gold Investments Limited ("YSI", together the "Applicants") and upon by my review of the relevant documents.

2. I am a lawyer and have been licensed to practice in Israel since 1994. I am a partner in the law firm of Chen, Yaari, Vaki & Co. My practice focuses on commercial disputes. As such, I have regularly litigated in Israeli courts throughout my career.

3. I make this declaration as to Israeli laws and judicial procedures set forth herein upon my personal knowledge.

4. I make this Declaration in support of the Section 1782 Application submitted by Applicants for an order pursuant to 28 U.S.C. § 1782 to take discovery from Respondents JP Morgan Chase Bank N.A. ("JP Morgan Chase"), Continuing

Evangelical Episcopal Communion, Inc. ("CEEC.CHURCH"), and the Province of Reconciliation, Inc. ("Province of Reconciliation"; together, the "Respondents").

5. I am fluent in English and make this Declaration without the aid of a translator.

6. I currently represent Applicants in litigation in Israel against the Vincent Society Israel (the Anglican Church) ("Vincent Association") and the Israeli Trust of the Anglican Church ("Anglican Trust"; together, the "Anglican Associations") in the Jerusalem District Court in case number 11929-09-25, (the "Israeli Proceedings").

7. YSRE is a company that is organized under the laws of the State of Israel and headquartered in Jerusalem.

8. YSI is a company that is organized under the laws of the State of Israel and headquartered in Jerusalem.

9. Applicants seek assistance from the United States District Court for the Middle District of Florida to obtain documentary evidence from JP Morgan Chase, the Province of Reconciliation, and CEEC.CHURCH to support civil proceedings brought by the Vincent Association and the Anglican Trust against YSRE and YSI that are pending in the Jerusalem District Court in front of Judge Shoshana Leibovitz in case number 11929-09-25. Applicants intend to use the documentary evidence received to refute allegations by the Anglican Associations of an allegedly fraudulent sale of real estate and the non-receipt of funds relating to duly executed sale agreements and contracts between Applicants and the Anglican Associations.

## BACKGROUND

**The Anglican Associations' Legal Structure and Properties**

10. The Vincent Society is a registered charity in England and Wales operating as the Church's Ministry Among Jewish People ("CMJ UK"). It is one of ten official mission agencies of the Church of England.

11. A smaller branch organization of CMJ UK, CMJ Israel, operates the Church's Ministry Among Jewish People in Israel through two entities organized under the laws of the State of Israel, the Anglican Associations.

12. The Anglican Associations operate in tandem, and their operating structures require approval from both boards of directors for certain transactions and official decisions to be fully ratified.

13. The Vincent Association owned two buildings that are the subjects of the Israeli Proceedings: (1) the prior Voice of Israel building located at 25 Shabtai Petrushka Street in Jerusalem ("25 Petrushka Street"); and (2) the Anglican International School in Jerusalem located at 82 Ha-Nevi'im Street in Jerusalem ("82 Ha-Nevi'im Street", and, together with 25 Petrushka Street, the "Contested Properties").

14. The Anglican Trust managed both buildings.

**The Anglican Associations Approach Applicants for Liquidity and Assistance**

15. The Anglican Associations first approached the Applicants in early 2024, when they were experiencing significant financial distress and sought financial assistance. In connection with that distress, they requested that Applicants provide loans secured by liens on several properties owned and managed by the Anglican

Associations seeking to alleviate financial stress. The Anglican Associations represented to the Applicants that they needed liquidity and that they would soon not be able to pay their workers' pensions.

16. At the time the Anglican Associations approached Applicants, the Vincent Association was not complying with Israeli association law. It lacked a bank account, the ability to transact business, and other formalities required under Israeli law.

17. In 2024, 25 Petrushka Street was in disrepair: it was not officially connected to the electrical grid due to the failure to meet code requirements, it relied on a neighbor for power, and it lacked proof of certificate of habitability. Timothy Butlin, chairman of the board of the Vincent Association, confirmed these issues and the Vincent Association's noncompliance in an email to one of the partners of YSRE and YSI, and that these issues were longstanding.

18. Other property owned by the Vincent Society in Tel Aviv also required refurbishment.

19. The Anglican Associations approached the Applicants through Mordechai Weberman ("Weberman"), an agent of the Church. To whatever extent Weberman was paid as a broker of these dealings, it was through the Church and not YSRE or YSI.

20. Weberman is not an agent of either YSRE or YSI and does not represent either organization, and Applicants had no prior connection to Weberman before his outreach on behalf of the Anglican Associations.

### The Loans and Planning the Acquisition of 82 Ha-Nevi'im Street

21. Applicants proceeded to negotiate with Rev. Aaron Eime ("Director Eime"), a director of both Anglican Associations. Applicants and the Anglican Associations agreed to two $500,000 loans in exchange for two liens, one on 82 Ha-Nevi'im Street, and the other on the property in Tel Aviv. The loans included a clause that indicated that the loans would become due in one year unless the properties are to be sold and, in an event of a sale prior to the year, the lender will be paid back first.

22. Applicants provided one of the loans to the Anglican Associations in March 2024 through a wholly owned and controlled entity, Mishkenot Hauma Real Estate Limited ("Mishkenot Hauma").

23. Due to the lack of active bank accounts by the Vincent Association, representatives of the Anglican Associations directed Applicants to send funds to CMJ UK account in the United Kingdom. Mishkenot Hauma therefore transferred funds to the CMJ UK account in the United Kingdom, although later transfers were rejected by the recipient bank. Mishkenot Hauma also transferred funds to an account in Turkey at the request of the Anglican Associations. Around this time, Aaron Eime was also promoted to General Director of CMJ UK.

24. In September 2024, after several transfers to CMJ UK accounts were returned by the recipient banks, the Anglican Associations directed Mishkenot Hauma to transfer the remaining $500,000 to the JP Morgan Chase bank account of an Anglican organization in the United States, CEEC.CHURCH to an account named the Province of Reconciliation, to be transferred to the Anglican Associations.

25. In addition to the loans, and as part of the agreed process to prepare 82 Ha-Nevi'im Street for sale, Applicants agreed to assist the Anglican Associations in restoring the Vincent Association's legal good standing. Applicants connected the Anglican Associations to lawyers at Weiss Schwarz Keidar, Law Office ("Weiss Schwarz Keidar"), who assisted in establishing appropriate legal and accounting infrastructure for the Vincent Associations.

26. Weiss Schwarz Keidar were retained by the Anglican Associations but financed by Applicants. Weiss Schwarz Keidar assisted the Vincent Association in: regularizing the board composition, filing documents with the land registry, updating five years of deficient annual reports, and appointing a certified accountant, along with other duties that arose related to the property transactions.

27. In connection with the real estate transactions between the Anglican Associations and Applicants, Attorney Kobi Ifrach, was designated with a power of attorney.

### The Planned Acquisition of 25 Petrushka Street

28. Applicants invested in bringing 25 Petrushka Street into compliance. Applicants remedied all outstanding code and regulatory violations, and secured the requisite certifications and approvals, thereby restoring the property to full legal compliance and making it suitable for lawful sale. This resolution was undertaken to resolve longstanding issues that the Anglican Associations had been unable to address in the past.

### The Sale of the Migdal Hostel

29. The Anglican Trust was a legally compliant Israeli entity and owned a hostel property located in Migdal, Israel. The Anglican Associations approached Applicants to sell the property. After negotiations, the price of approximately NIS 6.5 million was agreed and the sale went through the appropriate approval process required by the Anglican Associations operating structure.

30. The sale of the Migdal Hostel included approvals by the boards of the Anglican Associations. The sale agreement was signed by: (1) Father Daryl Fenton ("CEO Fenton"), the chief executive office and board member of both Anglican Associations; and (2) David Zadok ("Zadok"), board member of both Anglican Associations.

31. In the sale of the Migdal Hostel, both parties were represented by counsel. The Anglican Associations were represented by Weiss Schwarz Keidar.

32. The Migdal Hostel sale is not contested in the Israeli Proceedings.

**The Sales of 25 Petrushka Street and 82 Ha-Nevi'im Street**

33. The Anglican Associations then proceeded with the previously contemplated sales of 82 Ha-Nevi'im Street and 25 Petrushka Street. Negotiations between the Anglican Associations and the Applicants settled on a sale price of NIS 7.5 million for 25 Petrushka Street in a transaction to YSRE, and NIS 60 million for 82 Ha-Nevi'im Street in a transaction to YSI.

34. The procedures executed for the sale of the Contested Properties was in line with the procedure executed for the sale of the Migdal Hostel. As part of the sale process, meetings of the necessary boards of the Anglican Associations and their

agents were called to approve the transactions of the Contested Properties. These meetings included meetings of the general assembly, the audit committee, and the board of directors of the Anglican Associations. The meetings were scheduled for June 26, 2025, and were to occur on Zoom.

35. On June 26, 2025, Karen Schwarz of Weiss Schwarz Keidar was present on the calls. Karen Schwarz represented to representatives of applicants after each call, which Applicants were not present at, that the sales had been approved.

36. The sale instruments, including sale agreements, deeds of transfer of the Contested Properties, and meeting minutes were signed by the following individuals in various combinations: (1) CEO Daryl Fenton; (2) David Zadok; (3) Joy Dorothy Marshall, as the secondary authorized signatory of the Vincent Association; (4) Rev. Canon Philip Harris, as a board member of CMJ UK and the Vincent Association and a Global Ecumenical Officer of CEEC.CHURCH; (5) Aaron Eime, General Director of CMJ UK and audit committee member of Vincent Association; and (6) Levia Ann Saran, a member of the audit committee along with Director Aaron Eime.

37. As part of the transaction, a trust account in the name of the Vincent Association was opened at Bank Leumi (King Goerge Branch, Jerusalem) through the duly signed power of attorney granted to Attorney Ifrach ("Trust Account"). YSRE was directed to transfer NIS 1 million and YSRE was directed to transfer NIS 9 million to this Trust Account as initial payments on the properties.

38. Attached as Exhibit 1 is a true and correct copy of a receipt in the Hebrew language from Attorney Ifrach to YSI reflecting a NIS 1 million deposit in the Trust Account. Attached as Exhibit 2 is a certified translation of this receipt.

39. Attached as Exhibit 3 is a true and correct copy of a receipt in the Hebrew language from Attorney Ifrach to YSI reflecting a NIS 9 million deposit in the Trust Account. Attached as Exhibit 4 is a certified translation of this receipt.

40. On June 26, 2025, CEO Daryl Fenton issued a signed document directing Attorney Ifrach to thereafter transfer the proceeds of the sales in the Trust Account to the Province of Reconciliation JP Morgan Chase account. Attached as Exhibit 5 is a true and correct copy of the signed document from CEO Fenton. Attached as Exhibit 6 is a certified translation of this document.

41. In July and August 2025, in compliance with that document, Attorney Ifrach transferred the NIS 10 million in the Trust Account to the Province of Reconciliation JP Morgan Chase account in U.S. dollars.

42. Attached as Exhibit 7 is a true and correct copy of a statement from the Trust Account and individual transaction receipts. Attached as Exhibit 8 is a certified translation of these documents.

43. YSRE and YSI thereafter registered cautionary notes at the Israeli land registry to record their purchase of the Contested Properties.

## THE ISRAELI PROCEEDINGS

44. The Anglican Associations thereafter commenced proceedings In the Israeli Proceedings, the Anglican Associations seek to enjoin and rescind the sales of

the Contested Properties, asserting that: (1) the sale agreements were signed by the proper people but were signed without full knowledge of the documents that were being signed; (2) other documents signed by certain board members in the course of the real estate transactions were forged; and (3) that the funds purportedly for the purchase of the properties at issue were never received by the Anglican Associations or other agents of the Church of England (described further below). The Anglican Associations have refused to acknowledge proper receipt of the funds despite being shown receipts and transfer documents.

45. Specifically, the Anglican Associations maintain that CEO Fenton and Marshall signed the documents but were unaware of what they were signing. Further, they insist that the meeting on June 26, 2025, was attended by CEO Fenton and Marshall and that CEO Fenton did sign documents at that meeting. The Anglican Associations assert that a meeting of the general assembly was held, but the sale of the Contested Properties was not at issue and that the signed meeting minutes are forged. The Anglican Associations also maintain that: the signature of Philip Harris is forged; that no Board Meeting was held and the minutes are forged; and that the signature of Levia Ann Saran is forged.

46. In the Israeli Proceedings, Applicants will assert in response that: (1) the Anglican Associations duly executed the sale agreements and attendant documents were approved by multiple boards through multiple meetings, including meetings attended by their Israeli counsel and they were not forged; and (2) that the Anglican Associations in fact received the funds transfers to their account in Israel and in

accordance with their signed instructions to send the funds to the Province of Reconciliation through its bank JP Morgan Chase.

47. Applicants therefore seek documents in the form of records maintained by JP Morgan Chase related to the transfers from Applicants to CEEC.CHURCH and the Province of Reconciliation, and documents and communications in the possession, custody or control of CEEC.CHURCH and the Province of Reconciliation.

48. Applicants expect that the evidence obtained will prove that the sale proceeds were received by the Church of England and/or its agents and, further, that the documents from the Province of Reconciliation and CEEC.CHURCH will establish that Church agents not only received the transfers, but expected them and internally acknowledged that they were for the sale of the properties at issue in the Contested Proceedings.

### THE EVIDENCE IS NOT OBTAINABLE IN ISRAEL

49. The documentary evidence sought by the requests cannot be obtained in the Israeli Proceedings. JP Morgan Chase, CEEC.CHURCH, and the Province of Reconciliation are not subject to discovery in Israel, and none are participants in the Israeli Proceedings. The Respondents are not expected to be parties to the Israeli Proceedings, which concerns real estate transactions between Applicants and the Anglican Associations.

50. The bank branch of JP Morgan Chase that received the transfers is located in St. Johns, Florida. The Province of Reconciliation and CEEC.CHURCH are headquartered in Jacksonville, Florida, and have no offices or representatives, to

my knowledge, in Israel. As Respondents are not in Israel, Israeli courts would be unable to order production of any evidence from Respondents, especially Respondents communications and records.

### ISRAELI COURTS ARE RECEPTIVE TO THE DISCOVERY SOUGHT

51. Israeli courts would not reject evidence obtained via Section 1782. There is no provision of Israeli law that would prohibit collecting evidence through Section 1782 and Israeli courts have been receptive to the type of documentary evidence sought through this application in other proceedings, provided that the evidence otherwise satisfies the requirements for admissibility under Israeli law.

### THE APPLICATION DOES NOT CIRCUMVENT ISRAELI PROOF-GETHERING RESTRICTIONS

52. The Section 1782 Application does not circumvent proof-gathering restrictions under Israeli law. Parties to a proceeding in Israeli have the right to introduce evidence to make or defend against claims.

53. As the Respondents are located outside Israel and because they are not parties to the proceedings, the only available method Applicants have for obtaining the evidence they need to defend themselves in the Israeli Proceedings is through Section 1782.

54. Furthermore, the discovery sought herein, in the form of financial records, documents, and communications, does not, to my knowledge, violate any restrictions under Israeli law on evidence gathering. The requests are narrowly tailored with respect to the time period between September 2024 and August 2025, and with

respect to subject matter related to specific transactions and specific parties.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this February 26, 2026, in Tel Aviv, Israel.

By: _____
     Yitzhak Yaari